# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 27 2017, 9:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael Frischkorn
Fortville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Benton Courtney,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 27, 2017<br><br>Court of Appeals Case No.<br>48A02-1604-CR-864<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Mark Dudley, Judge<br><br>Trial Court Cause No.<br>48C06-1504-F5-491 |

**Najam, Judge.**

# Statement of the Case

Benton Courtney appeals the trial court's revocation of his probation and its order that he serve the entirety of his previously suspended sentence. Courtney raises two issues for our review, namely:

1. Whether the trial court erred when it rejected Courtney's proffered affirmative defense of necessity.

2. Whether the court abused its discretion when it ordered Courtney to serve the entirety of his previously suspended sentence.

We affirm.

# Facts and Procedural History

On November 30, 2015, Courtney pleaded guilty, pursuant to a written agreement, to possession of methamphetamine, as a Level 5 felony; maintaining a common nuisance, as a Level 6 felony; and theft, as a Class A misdemeanor. Pursuant to the plea agreement, the State recommended that Courtney receive a three-year sentence suspended to probation. The trial court accepted the plea agreement and sentenced Courtney accordingly.

Less than one month later, Courtney led Alexandria Police Department Officers Michael Montgomery and Joe Heath on a high-speed chase through a residential neighborhood. In particular, the officers observed Courtney cross double-yellow lines and drive seventy miles per hour in a twenty-mile-per-hour residential zone. They also observed Courtney twice fail to stop at four-way

stops in that residential area. And, during the chase, the officers observed Courtney laughing.

[5] Courtney eventually complied with the officers' demands to stop his vehicle. The officers then ordered Courtney out of the vehicle. Also inside the vehicle were Myra Applegate, Courtney's mother, in the front passenger's seat and Kayla Short in the back seat along with two children younger than two years old.

[6] After the officers had placed Courtney in a patrol vehicle, Short and Applegate stated that Courtney had been trying to get Applegate to a hospital because she had been having seizures. The officers called for paramedics, but, upon their arrival, Applegate told them that "she was not having a seizure and she felt fine." Tr. at 32.

[7] Thereafter, the State filed a notice of probation violation in which the State alleged that Courtney had committed several new offenses, namely, resisting law enforcement, as a Level 6 felony; neglect of a dependent, as a Level 6 felony; and criminal recklessness, as a Level 6 felony. The State further alleged that, shortly before the traffic incident, Courtney had tested positive for methamphetamine and amphetamine.

[8] The trial court held an evidentiary hearing on the State's notice of probation violation. At that hearing, Courtney admitted to the failed drug test, but he argued that his traffic violations were justified under the doctrine of necessity

because he needed to get his mother to a hospital. The trial court, not convinced, stated:

> I heard your explanation for why this happened and it's[,] put very bluntly, not believable, not even close. You['re] driving away from the . . . hospital that's in close proximity of your home . . . . Secondly[,] if I'd say that's okay . . . , you're going to the next closest hospital, you leave the most direct route to get there[] to enter into a residential area where . . . you go at a high rate of speed . . . away from the closest hospital. If you're truly going to the hospital, even if there is a police officer behind you, you don't start going into residential areas away from your intended . . . destination. That is not objectively reasonable, that is anything but reasonable on any standard . . . . You had other alternatives available to you, you could call an ambulance. Again, even if you were going to the hospital . . . that does not give you leave to cross double yellow lines, we have evidence of that. That does not give you leave to go seventy miles an hour in a twenty mile an hour zone, we have evidence of that. [A]s I said, it's not even close. Your explanation does not hold water . . . .

*Id.* at 42-43. The court then revoked Courtney's placement on probation and ordered him to serve the entirety of his previously suspended sentence. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[9] Courtney argues on appeal that the trial court erroneously rejected his defense of necessity and that the court abused its discretion when it ordered him to

serve the entirety of his previously suspended sentence. As the Indiana Supreme Court has stated:

> "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). It is within the discretion of the trial court to determine probation conditions and to revoke probation if the conditions are violated. *Id.* In appeals from trial court probation violation determinations and sanctions, we review for abuse of discretion. *Id.* An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances, *id.*, or when the trial court misinterprets the law, *see State v. Cozart*, 897 N.E.2d 478, 483 (Ind. 2008) (citing *Axsom v. Axsom*, 565 N.E.2d 1097, 1099 (Ind. Ct. App. 1991) ("An abuse of discretion may also be found when the trial court misinterprets the law or disregards factors listed in the controlling statute.")).

*Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). We address each of Courtney's arguments in turn.

### Issue One: Necessity Defense

We first consider Courtney's argument that the trial court erred when it rejected his proffered affirmative defense of necessity. As we have explained:

> In order to prevail on a claim of necessity, the defendant must show (1) the act charged as criminal must have been done to prevent a significant evil, (2) there must have been no adequate alternative to the commission of the act, (3) the harm caused by the act must not be disproportionate to the harm avoided, (4) the accused must entertain a good faith belief that his act was necessary to prevent greater harm, (5) such belief must be objectively reasonable under all the circumstances, and (6) the

accused must not have substantially contributed to the creation of the emergency. *Toops v. State*, 643 N.E.2d 387, 390 (Ind. Ct. App. 1994). In order to negate a claim of necessity [in a criminal trial], the State must disprove at least one element of the defense beyond a reasonable doubt. *See Pointer v. State*, 585 N.E.2d 33, 36 (Ind. Ct. App. 1992) (discussing State's burden in the context of an analogous self-defense claim). The State may refute a claim of the defense of necessity by direct rebuttal, or by relying upon the sufficiency of the evidence in its case-in-chief. *Id.* The decision whether a claim of necessity has been disproved is entrusted to the fact-finder. *Id.*

*Dozier v. State*, 709 N.E.2d 27, 29 (Ind. Ct. App. 1999).

[11] Courtney's entire argument on this issue on appeal is a request for this court to credit and give controlling weight to his testimony instead of the testimony of the officers involved in the traffic incident. We will not reweigh the evidence on appeal or reassess the credibility of the witnesses. The trial court acted within its discretion when it found Courtney's proffered defense "not believable," "not objectively reasonable," and "not even close." Tr. at 42-43. We affirm the trial court's rejection of Courtney's affirmative defense and the revocation of his probation.

### Issue Two: Imposition of Entirety of Previously Suspended Sentence

[12] Courtney also asserts that the trial court abused its discretion when it ordered him to serve the entirety of his previously suspended sentence. Courtney's entire argument on this issue is as follows:

> Courtney admitted to a dirty drug screen and using methamphetamine[,] which saved the State time and effort to prove the violation. Also, this is the first probation violation and it does not rise to the level of revoking probation and ordering that Courtney serve the previously suspended sentence. At the time of the initial sentencing, the underlying conviction was Courtney's only felony conviction. Courtney has been cooperative from the initial guilty plea in this case to the probation violation admission.

Appellant's Br. at 10.[1]

[13] We cannot agree with Courtney. The evidence before the trial court demonstrated that, less than one month after he had been placed on probation, Courtney used illicit substances and committed new offenses of resisting law enforcement, as a Level 6 felony; neglect of a dependent, as a Level 6 felony; and criminal recklessness, as a Level 6 felony. And the facts underlying Courtney's new offenses demonstrate an egregious disregard for law enforcement and the safety of others, including two very young children who were in his vehicle at the time of the offenses. Based on the facts before the trial court, the court's imposition of the entirety of Courtney's previously suspended sentence was well within its discretion. As such, we affirm the court's judgment.

---

[1] We do not interpret Courtney's argument on this issue to be a challenge to the revocation of his probation.

[14]    Affirmed.

Bailey, J., and May, J., concur.